In the Matter of MARY V. MURRAY et al., Appellants, against FIORELLO H. LA GUARDIA et al., Constituting the Board of Estimate of the City of New York, et al., Respondents.

Present — Martin, P. J., Untermyer, Dore, Cohn and Callahan, JJ.; Untermyer, J., dissents in opinion in which Callahan, J., concurs.

UNTERMYER, J. (dissenting). It is unnecessary to state fully the facts developed in the present record, since both parties appear to concede that the sufficiency of the respondents' answers depends on the validity of certain provisions of chapter 234 of the Laws of 1943 known as the Redevelopment Companies Law. I shall, therefore, limit myself to a consideration of that aspect of the statute which, in my opinion, is fatal to the right of the city to exercise the power of eminent domain under which the property owned by the petitioners is to be acquired for the project to be known as Stuyvesant Town.

The Constitution of New York State (art. XVIII, § 2) now authorizes the Legislature, in addition to other authority thereby conferred, to "grant or authorize tax exemptions in whole or in part, except that no such exemption may be granted or authorized for a period of more than sixty years; * * * grant the power of eminent domain to any city, town or village, to any public corporation and to any corporation regulated by law as to rents, profits, dividends and disposition of its property or franchises and engaged in providing housing facilities."

It is undisputed that Stuyvesant Town Corporation, for whose benefit the power of eminent domain is to be exercised, is a private corporation. It would seem to follow, therefore, that under section 2 of article XVIII of the Constitution the power of eminent domain may not be exercised unless it is a corporation "regulated by law as to rents, profits, dividends and disposition of its property or franchises," within the intent of the Constitution. Whether it is thus regulated presents, I think, the crucial question in the case, for it is very evident that the Constitution does not delegate the sovereign power to acquire by compulsion the property of other persons to a private corporation operated for private profit without restriction or regulation of any kind.

The Redevelopment Companies Law authorized limited tax exemption for a period not exceeding twenty-five years to corporations engaged in providing housing facilities. It provides, also, for regulation of such corporations as to rents, profits, dividends and the disposition of their property or franchises, *but only during the period of tax exemption.* It expressly permits such corporations at any time to relinquish the benefits of tax exemption by restoring to the municipality "all accrued taxes for which such exemption was granted and received, together with interest at the rate of five per centum per annum."

(§ 24, subd. 1.) Consequently, such a corporation, after exercising the power of eminent domain, might at any time shake off all the safeguards which the Constitution requires as a condition of the exercise of that power by the simple expedient of relinquishing the benefit of tax exemption. I cannot believe that these salutary provisions of the Constitution are satisfied by restrictions from which the corporation may escape at will. Nor, in my opinion, would regulation of these activities of the corporation, though for twenty-five years, constitute compliance with the Constitution. It is the corporation, not the project, which under the Constitution must be regulated in the manner prescribed and since it provides no limitation in point of time it necessarily follows that regulation must continue throughout the existence of the corporation.

The effect of this deviation from the requirements of the Constitution may assume an importance in the future which it may not seem to have today. The time may come when rentals shall increase beyond the levels specified in the contract between the corporation and the city of New York. If that occurs after the expiration of twenty-five years the restrictions specified in the Constitution will be nullified. If it shall occur before, then it may be to the advantage of the corporation to renounce the tax exemption, relieve itself from the limitations imposed by statute and the contract, demand as much rent as it can earn and even alienate property acquired by condemnation almost as freely as if the restraints required by the Constitution had never been imposed. I do not consider that such a result was intended by these provisions of the Constitution.

The respondents seek to justify these provisions of the statute on the ground that the restrictions will endure as long as the corporation enjoys the benefit of tax exemption. The Constitution, however, does not imply that regulation of the corporation may be thus conditioned or limited. It creates no connection between the power of eminent domain and the right of tax exemption. Tax exemption may be granted and the power of eminent domain withheld or, conversely, the power of eminent domain may be granted and exemption from taxation may be withheld. The relation which the Constitution creates is between the power of eminent domain and regulation of the rents, profits, dividends and disposition of the property of the corporation by which that power shall be exercised. That is the price specified to be paid for a power which is not ordinarily delegated to private corporations operated for private profit. Since it is sought to be exercised in acquiring the plaintiffs' property without fulfilment of the conditions which the Constitution has prescribed as indispensable, an injunction against the violation of the plaintiffs' rights should be granted.

The order should be reversed and the relief demanded in the petition granted.